**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

EMILY DUSTMAN,                 )
                                          )
       Plaintiff,                 )
                                          )
       v.                       )           Case No. 4:23CV592 JAR
                                          )
UNITED SOYBEAN BOARD,        )
                                          )
       Defendant.               )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Remand to State Court. ECF No. 20. Defendant filed a response in opposition. The matter is fully briefed and ready for disposition.  For the reasons set forth below, the Court will deny Plaintiff's Motion.

### Background and Facts

On March 31, 2023, Plaintiff Emily Dustman filed this employment discrimination action in the Circuit Court of St. Louis County, Missouri, against Defendant United Soybean Board ("USB"), alleging sex and race discrimination under the Missouri Human Rights Act.

On May 5, 2023, Defendant USB removed Plaintiff's Petition based on the federal officer removal statute pursuant to 28 U.S.C. § 1442(a)(1). On July 25, 2023, Plaintiffs filed the instant motion, alleging that the Court lacks subject matter jurisdiction because Defendant USB is not a United States defendant and cannot base its removal under 28 U.S.C. § 1442(a)(1).

In its response to the instant motion, Defendant USB argues its notice of removal is properly filed under the federal officer removal statute because Plaintiff's claims related to federally delegated duties overseen by a federal authority, and Defendant USB has a colorable federal defense. Plaintiff did not file a reply.

Plaintiff's Petition

Plaintiff alleges that she worked for Defendant USB as a director of science communication and education, and she was also the director of diversity, equity, and inclusion ("DEI") research. During her employment, Plaintiff maintains that she was subjected to sexual harassment by an affiliate of Defendant USB at a mandatory work event. Plaintiff made a complaint about the sexual harassment, and the individual resigned because of the complaints from her and other women. Plaintiff also reported incidents of race discrimination. Plaintiff claims that instead of investigating her discrimination complaints, Defendant USB almost immediately terminated Plaintiff after she made her second complaint for discrimination and retaliation. Plaintiff requests damages, fees and costs.

United Soybean Board

The Soybean Promotion, Research, and Consumer Information Act (the "Act") was established to maintain and expand domestic and foreign markets and uses for soybeans and soybean products. *See* 7 U.S.C. §§ 6301 *et seq*. Most relevant here, the Act established the USB, which decides how the assessments on domestically produced soybeans will be invested. *See* 7 U.S.C. § 6304(b)-(f). The assessments are collected by a Qualified State Soybean Board, which the Act defines as "a [s]tate soybean promotion entity that is authorized by [s]tate law." *Id.* at § 6302(14). Assessments are collected by Qualified State Soybean Boards in which they retain one-half and then remit the remainder to Defendant USB. *Id.* at § 6304(l)(1)(A)-(B), (m). This assessment process is often referred to as the "checkoff" program.  The Agricultural Marketing Service ("AMS"), an arm of the United States Department of Agriculture, oversees Defendant USB.[1] The rules of practice governing formal adjudicatory proceedings instituted by the

---

[1] https://www.ams.usda.gov/rules-regulations/research-promotion (last visited January 12, 2024).

Secretary of Agriculture are applicable to proceedings under the Act. *See* 7 C.F.R. §§ 1.130 to 1.151, *discussed in* §§ 34:1 to 34:74.

Members of Defendant USB are appointed by the Secretary of Agriculture as provided in 7 U.S.C. § 6304. *Id.* at § 6304(b)(1). The Act authorizes Defendant USB to hire staff and enter into contracts and agreements. *Id.* at § 6304(i)-(j). The Act directs that Defendant USB "shall review or, on its own initiative, develop plans or projects of promotion, research, consumer information, and industry information, to be paid for with funds received by the Board[,]" which must be approved by the Secretary. *Id.* at § 6304(f). The board members and boards' staff carry out these plans and programs and day-to-day board management responsibilities. *See* 7 U.S.C. §§ 6304, 6111. Defendant USB does not receive federal appropriated funds and is responsible for its own expenses. *Id.* at § 6304(i)(1). Defendant USB is treated as a 501(c)(1) organization for tax purposes, which is "[a] corporation organized under an Act of Congress which is an instrumentality of the United States." 26 U.S.C. § 501(c)(1); *see also,* ECF No. 30-1 at ¶ 15.

The Secretary may remove any member of the board or any employee of the board if the Secretary believes his/her continued service would be detrimental to the purposes of the Act. *See* 7 C.F.R. § 1220.208. The Secretary also holds the authority to terminate the existence or suspend the operation of any provision of Defendant USB, or Defendant USB in its entirety, if the Secretary finds that it "obstructs or does not tend to effectuate the declared policy" of the Act. 7 U.S.C. 6310.

### Legal Standard

"The district courts of the United States ... are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the

United States." 28 U.S.C. § 1331. A civil action brought in state court may be removed to the proper district court if the district court has original jurisdiction of the action. 28 U.S.C. § 1441(a). The federal officer removal statute, 28 U.S.C. § 1442(a)(1), "grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction." *Johnson v. Showers*, 747 F.2d 1228, 1229 (8th Cir. 1984) (internal quotations and marks omitted). Section 1442 allows removal of any civil or criminal action against the United States, or "any agency thereof or any officer (or person acting under that officer) of the United States or any agency thereof," when sued in an "official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1). When the removing party is not a federal officer or agency, "it may remove a case only if it shows it was 'acting under' a federal officer or agency in carrying out the acts that underline the plaintiff's complaint." *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021) (citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007)). The statute is "an incident of federal supremacy." *Willingham v. Morgan*, 395 U.S. 402, 405 (1969); U.S. Const. art. VI, cl. 2 (Supremacy Clause). Its principal purpose is to afford the designated classes of defendants "the protection of a federal forum" when they incur or potentially incur liability under state law for performing "their duty to enforce federal law." *Willingham*, 395 U.S. at 407.

To properly establish removal under Section 1442(a)(1), a defendant must show all of the following four elements:

(1) it is a "person" within the meaning of the statute;
(2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office;
(3) it raises a colorable federal defense; and
(4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

28 § U.S.C. 1442(a)(1); *Mesa v. California*, 489 U.S. 121, 129 (1989).

4

The statute is "an exception to the well-pleaded complaint rule." *Buljic*, 22 F.4th at 738 (internal quotation marks omitted). It should be "liberally construed, and thus the typical presumption against removal does not apply." *Id.* (internal quotation marks omitted).

## Discussion

It is undisputed that Plaintiff's claims are not a matter of federal question and diversity does not exist between the parties, as they are both Missouri residents. Therefore, the Court can only maintain jurisdiction in this case if the federal officer removal statute applies. The Court will address each element of the statute separately.

<u>"Acting Under"</u>

The Supreme Court has emphasized that the federal officer removal statute is "not limitless." *Watson,* 551 U.S. at 147. When applying the statute, the court must consider the "language, context, history, and purposes." *Id.* "A business that simply follows federal law, even highly detailed and complex regulations, does not act under a federal officer." *Id.* at 151–53. The "relevant relationship" that must exist "typically involves subjection, guidance, or control." *Id.* at 151 (internal quotation marks omitted). It "must involve an effort to *assist,* or to help *carry out,* the duties or tasks of the federal superior." *Id.* at 152 (emphasis in the original).

The Eighth Circuit very recently addressed the "acting under" requirement of Section 1442(a)(1) and concluded that "a party acts under a federal officer, within the meaning of the federal officer removal statute, only when it performs a 'basic governmental task[].'" *Doe v. BJC Health System*, 2023 WL 4855186, at \*4, --- F.4th ---- (8th Cir. 2023) (citing *Watson*, 551 U.S. at 153) (finding that removal failed on the "acting under" element because there was "no evidence of any delegation of legal authority from the [Federal Trade Commission]" when Defendant tested cigarettes for tar and nicotine content); *Jacks v. Meridian Res. Co.,* 701 F.3d 1224, 1231–34 (8th Cir. 2012), *abrogated on other grounds by BP P.L.C. v. Mayor & City*

5

*Council of Balt.,* 141 S. Ct. 1532, 1538 (2021) (finding removal proper because when a health

insurer participates in the Federal Employees Health Benefits program, it "is helping the

government to produce an item that it needs—the basic governmental task of providing health

benefits for its employees."); *Graves v. 3M Co.,* 17 F.4th 764, 770 (8th Cir. 2021) (removal

proper when military obtained the earplugs, "developed its own instructions" for using them, and

distributed them to plaintiffs, but not proper in the civilian cases because 3M did not show that it

"was carrying out or assisting in the government's duties"); and *Buljic*, 22 F.4th at 79 (finding

removal improper because "Tyson conflates the federal government's designation of the 'food

and agriculture' sector as critical infrastructure with a finding that Tyson was fulfilling a basic

governmental task.").

 The Eighth Circuit defined "a basic governmental task" as:

> …involv[ing] a delegation of legal authority from a federal entity." *Watson*, 551 U.S. at 156; *see also Jacks*, 701 F.3d at 1233–34. In other words, the party acts on the government's behalf. *Watson*, 551 U.S. at 156. It performs or helps the government perform federal duties. *Id.* at 152; *Graves*, 17 F.4th at 770. The party does the business of the federal government and not merely its own.

*Doe*, 2023 WL 4855186, at *4.

 The Eighth Circuit went on to explain:

> The classic example of a person who acts under a federal officer is a government contractor. *Watson*, 551 U.S. at 153; *Jacks*, 701 F.3d at 1231–32; *Papp v. Fore-Kast Sales Co.,* 842 F.3d 805, 812 (3d Cir. 2016). Federal courts have often held that parties may invoke the statute and remove cases when they "provided the government with a product that it needed or performed a job that the government would otherwise have to perform." *Buljic*, 22 F.4th at 739; *see also Jacks*, 701 F.3d at 1234. Looking to our sister circuits, parties might also qualify for removal when they functioned in practice as "instrumentalities of the United States." *Butler v. Coast Elec. Power Ass'n*, 926 F.3d 190, 201 (5th Cir. 2019) (quoting *Ala. Power Co. v. Ala. Elec. Coop., Inc.,* 394 F.2d 672, 677 (5th Cir. 1968)); *Cessna v. REA Energy Coop., Inc.,* 753 F. App'x 124, 127 (3d Cir. 2018) (unpublished) (same); *Caver v. Cent. Ala. Elec. Coop.,* 845 F.3d 1135, 1143 (11th Cir. 2017) (same).

*Id.*

Cases in which the Supreme Court has approved federal officer jurisdiction "involve defendants working hand-in-hand with the federal government to achieve a task that furthers an end of the federal government." *Bailey v. Monsanto Company*, 175 F. Supp. 3d 853, 869-870 (E.D. Mo. 2016) (internal quotations omitted). A party seeking removal must have "provided the government with a product that it needed or performed a job that the government would otherwise have to perform." *Buljic*, 22 F.4th at 739. Plaintiff argues that Defendant USB is a private party supervised, directed, or monitored by a federal office, not one that acts under such an office. Plaintiff is correct that simply assisting the government by following the law or regulations is not "acting under" the directive of a federal officer for purposes of the federal officer removal statute. For example, taxpayers who complete tax forms or airline passengers who refrain from smoking on a plane are merely complying with the law, not carrying out a federal duty even though they may "help" or "assist" the federal government advance a directive. *Watson,* 551 U.S. at 152. Similarly, a privately regulated entity may not remove a case under 28 U.S.C. § 1442(a)(1) simply because "a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail." *Id.* at 145. Allowing private entities to trigger federal officer removal by merely complying with federal laws and regulations would impermissibly expand the scope of the statute. *Id.* at 153 ("Neither language, nor history, nor purpose led us to believe that Congress intended any such expansion.") However, that is not the case here.

Defendant USB was created by Congress for the federal government's benefit as it relates to the markets and uses for soybeans and soybean products, specifically to decide how the assessments on domestically produced soybeans will be invested. *See* 7 U.S.C. § 6304(b)-(f). In the Act's declaration of policy, Congress declared the following:

7

> [I]t is in the public interest to authorize the establishment, through the exercise of the powers provided in this chapter, of an orderly procedure for developing, financing through assessments on domestically-produced soybeans, and implementing a program of promotion, research, consumer information, and industry information designed to strengthen the soybean industry's position in the marketplace, to maintain and expand existing domestic and foreign markets and uses for soybeans and soybean products, and to develop new markets and uses for soybeans and soybean products.

*Id.* at § 6301(b).

Congress emphasized the importance of soybeans and soybean products, noting they play a "significant role in the economy of the United States" and "the maintenance and expansion of existing markets and development of new markets for soybeans and soybean products are vital to the welfare of soybean producers and processors and those concerned with marketing soybeans and soybean products, as well as to the general economy of the United States, and are necessary to ensure the ready availability and efficient marketing of soybeans and soybean products." *Id.* § at 6301(a).

The relationship between Defendant USB and the United States Department of Agriculture, through the Secretary and/or the AMS, involves significant "subjection, guidance, or control." *Watson*, 551 U.S. at 151. The AMS oversees the Department's research and promotion boards like Defendant USB and has issued regulations implementing the Act. *See* 7 C.F.R. Pt. 1220. The Secretary appoints Defendant USB's members, and all plans or projects must be approved by the Secretary. *See* 7 U.S.C. §§ 6304(b)(1) and (f). The Secretary holds the authority to remove any member of the board or its employees and can even terminate the existence or suspend the operation of Defendant USB in its entirety. *Id.* at § 6310. The rules of practice governing formal adjudicatory proceedings instituted by the Secretary are also applicable. *See* 7 C.F.R. §§ 1.130 to 1.151, *discussed in* §§ 34:1 to 34:74. Further, Defendant USB is treated as "[a] corporation organized under an Act of Congress which is an instrumentality of the United States." 26 U.S.C. § 501(c)(1); *see also,* ECF No. 30-1 at ¶ 15.

Defendant USB acts pursuant to an explicit "delegation of legal authority" from Congress with significant oversight by a federal office through the Secretary and the AMS.[2] *Watson,* 551 U.S. at 156. The creation and operation of Defendant USB is a basic governmental task. This is sufficient for removing a case under 28 U.S.C. § 1442(a)(1), and the Court finds that the "acting under" element is satisfied.

Casual Nexus

The statute requires a causal nexus between the claims and the conduct performed under color of a federal office. *See* 28 § U.S.C. 1442(a)(1)(4). The issue here is the termination of Plaintiff's employment with Defendant USB. Plaintiff claims her termination was done in retaliation for making complaints of sex and race discrimination. She maintains that Defendant USB has not provided any information to show it was acting on behalf of a federal agency when she was wrongfully terminated. In its response, Defendant USB denies her discrimination complaints had anything to do with her termination, and her position was actually eliminated, through the approval of AMS, during an organization restructuring to operate more efficiently. To provide specific factual support, Defendant USB attached a Declaration of its Chief Executive Officer ("CEO") Polly Ruhland in support of its argument. *See* ECF No. 30-1. CEO Ruhland states in her declaration, under the penalty of perjury, the following information in pertinent part:

Defendant USB employed Plaintiff as the Director of Science Communication and Education. *Id.* at ¶ 18. Plaintiff regularly researched and provided draft communications in the

---

[2] Because the Court finds that Defendant USB is "acting under" a federal office, it is not necessary to address if it is an "agency" of the United States for purposes of remand. Defendant USB requests a scheduling order to file dispositive motions on this issue. The Court notes there is currently a Case Management Order (CMO) in place with those deadlines (ECF No. 19), but will give the parties an opportunity to file a proposed amended CMO with new deadlines.

form of articles, newsletters, and project proposals geared toward agricultural education and educating the agricultural industry and others about U.S. soy. *Id.* at ¶ 19. The Secretary, through the AMS, oversees approval of Defendant USB's projects, plans, communications, investments, budgeting, and strategic planning. *Id.* at ¶ 16. One of Plaintiff's projects was DE&I research in the agricultural industry and in agricultural education, which CEO Ruhland believes that the AMS reviewed and approved communications, projects, and plans associated with this project. *Id.* at ¶ 21. Plaintiff reported DE&I gaps in various meetings, and CEO Ruhland did not witness Plaintiff make any discrimination complaints in the meetings she was present for. *Id.* at ¶ 22.

Defendant USB partners with multiple organizations to effectuate its plan and projects, like Children Learning through Outdoor Experiences (ChLOE), a non-profit organization. *Id.* at ¶¶ 16-17. Based on Plaintiff's duties regarding agricultural education, CEO Ruhland invited Plaintiff to get involved with ChLOE and to attend ChLOE's educator meeting as Defendant USB's representative. *Id.* at ¶ 23. The morning after ChLOE's first day of its educator meeting, CEO Ruhland was made aware that the Executive Director of ChLOE had allegedly acted inappropriately toward a number of individuals the night before, including Plaintiff. *Id.* at ¶ 24. The allegations were corroborated, and CEO Ruhland terminated the Executive Director's consulting contract with ChLOE that same day. *Id.*

Defendant USB has an Equal Employment Opportunity (EEO) policy that is required and approved by the AMS for both its employees and vendors that it contracts with. *Id.* at ¶ 13. One requirement of the EEO policy is that Defendant USB reports any allegations that the policy has been violated to the AMS. *Id.* at ¶ 14. Consistent with this policy, Plaintiff's sexual harassment complaints were reported to the AMS, and she was notified by CEO Ruhland that the Executive Director's contract was terminated. *Id.* at ¶¶ 26-27.

As part of its fiscal duties under the statute, regulations and Guidelines, Defendant USB periodically develops, receives review and approval for, and implements a strategic plan for how it will proceed. *Id.* at ¶ 28. During the 2021-2022 strategic planning, Defendant USB hired a consultant to investigate and propose new organizational structures so that Defendant USB could run more efficiently to better achieve its federal purpose under the newly board-approved strategic plan. *Id.* at ¶ 32. As a result, Defendant USB decided to change some titles and duties, add some titles with more strategic duties, and eliminate two positions (one of which was Plaintiff's position). *Id.* at ¶ 33. A number of factors were considered in order to make these decisions, none of which included Plaintiff's involvement in DE&I research or with the events occurring at ChLOE's educators meeting. *Id.* Generally, the factors considered were duties and titles that could serve Defendant USB's federal purpose most efficiently and responsibly as internal staff, as contract staff, or not at all. *Id.* Consistent with the statute, regulations, and the Guidelines, the AMS reviewed and approved Defendant USB's strategic plan. *Id.* at ¶ 38. After the decision was made to eliminate Plaintiff's position, and after she had been informed of a meeting with her management team (in which Defendant USB was going to notify her of the elimination of her position), Plaintiff sent an email alleging discrimination. *Id.* at ¶ 35. On June 9, 2022, Defendant USB informed Plaintiff of its elimination of her position as part of its approved strategic plan. *Id.* at ¶ 37. Defendant USB also informed the AMS of Plaintiff's email alleging discrimination as required under its EEO policy. *Id.* at ¶ 36.

"When ascertaining whether a removing defendant has made out a 'colorable defense'" and also established "the required causal connection," a court must "credit the [removing defendant's] theory of the case for purposes of" determining if the defendant has "made an adequate threshold showing that the suit is for an act under color of office." *Jefferson County v. Acker*, 527 U.S. 423, 432 (1999) (quotation marks and citations omitted). The "'hurdle erected

11

by this requirement is quite low.'" *Jacks*, 701 F.3d at 1230 n.3 (quoting *Isaacson v. Dow Chemical Co.,* 517 F.3d 129, 137 (2d Cir. 2008)). In *Minnesota by Ellison,* the Eighth Circuit concluded that the 2011 Clarification Act lowered the "causal connection" requirement for federal officer removal jurisdiction to a "relates to" standard. *Minn. by Ellison v. Am. Petroleum Inst.,* 63 F.4th 703, 715 (8th Cir. 2023) ("Though we have continued to describe the standard in terms of "causal connection," *see Buljic,* 22 F.4th at 738; *Graves*, 17 F.4th at 769, the causal connection required by § 1442(a)(1) is for the activity in question *to relate to* a federal office.") (emphasis added).

Here, Defendant USB must show that its actions were under color of a federal office and are related to Plaintiff's claims. Crediting Defendant USB's theory of the case, its jurisdictional evidence demonstrates Defendant USB was engaged in performing duties delegated through a federal office by the Secretary and/or the AMS regarding the subject of Plaintiff's claims relating to her employment. Defendant USB is directed to make strategic plans to best achieve its federal purpose, and it did so by hiring a consultant to propose changes to its organizational structure, which included the elimination of Plaintiff's position. The changes were approved by the AMS. The acts that form the predicate of Plaintiff's petition unquestionably occurred while Defendant USB performed its duties under the direction of a federal office or agency. Defendant USB has thus cleared the low hurdle to show Plaintiff's claims related to its decision to eliminate her position. *See Acker*, 527 U.S. at 432; *Jacks*, 701 F.3d at 1230 n.3.

Colorable Defense

Defendant USB must also establish a colorable federal defense to Plaintiff's claims. To remove under § 1442(a)(1), the Eighth Circuit has long held that "§ 1442(a)(1) does not require a court to hold that a defense will be successful before removal will be appropriate." *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001) ("[f]or a defense to be considered colorable, it need

only be plausible; § 1442(a)(1) does not require a court to hold that a defense will be successful before removal is appropriate."). A removing defendant may establish federal officer jurisdiction "with specific factual allegations…combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *O'Shea v. Asbestos Corporation, Ltd.,* 2019 WL 12345572, at *4 (D. N.D. Dec. 13, 2019) (quoting *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017) (internal citations and marks omitted)). The Supreme Court has provided "clear teaching that a colorable defense need not be proven at this stage of the litigation due to the broad removal right [§ 1442(a)(1)] creates[.]" *Id.* at *5 (citing *Hagen v. Benjamin Foster Co.,* 739 F. Supp. 2d 770, 781-782 (E.D. Pa. 2010)). Defendant USB is not required to make a "significant showing of the merits of [its] defense at this early stage." *Id.* (citing *Hagen*., 739 F. Supp. 2d at 781-782). Such a showing would violate the principal that the defendant moving for removal under federal officer jurisdiction "need not win [its] case before [it] can have it removed." *Graves*, 17 F.4th at 773 (citing *Willingham*, 395 U.S. at 407).

Defendant USB argues that it has the colorable federal defenses of sovereign immunity and official justification. Plaintiff merely states that because Defendant USB cannot demonstrate the "acting under" requirement, that forecloses any colorable federal defense of sovereign immunity. Even if Plaintiff was correct that the sovereign immunity defense was unavailable, she does not challenge Defendant USB's official justification defense, which the Court finds is clearly a colorable federal defense.[3]

Official justification has been deemed a "colorable" federal defense. *See Willingham,* 395 U.S. at 409. The Secretary holds the authority to remove any member of the board or its employees and can terminate the existence or suspend the operation of any provision of

---

[3] Because the Court finds that official justification is a colorable federal defense, it does not need to address the defense of sovereign immunity.

Defendant USB if the service would be detrimental to the purposes of the Act. *See* 7 U.S.C. §

6310.  The Secretary appoints Defendant USB's members, and all plans or projects must be

approved by the Secretary and/or the AMS, who oversees Defendant USB. *Id.* at §§ 6304(b)(1)

and (f). As evidenced by the summary of CEO Ruhland's Declaration above, Defendant USB is

directed to operate to carry out its federal purpose most efficiently and make plans and projects,

with the approval of the AMS, to further this end. Defendant USB was carrying out its federal

directive by changing its organizational structure to be more efficient. Under Defendant's theory,

these changes included the elimination of Plaintiff's position and were approved by AMS. The

merits of Defendant USB's assertions about the elimination of Plaintiffs position are irrelevant at

this stage; what matters is whether Defendant USB has set forth plausible facts that advance a

colorable defense of official justification. The law does not require that these defenses be clearly

sustainable in order to support removal under § 1442(a)(1). *See Willingham*, 395 U.S. at 406–07

("[The federal officer removal statute] is broad enough to cover all cases where federal officers

can raise a colorable defense.... The officer need not win his case before he can have it

removed."). Defendant USB has successfully alleged a colorable federal defense, and the Court

finds this element is satisfied.

> A "Person"

Lastly, Defendant USB must be a "person" within the meaning of the statute. Plaintiff

does not provide any argument that Defendant USB is not a "person" within this meaning. The

term "person" includes "corporations, companies, associations, firms, partnerships, societies, and

joint stock companies, as well as individuals." 1 U.S.C. § 1; *see also, Lopez v. Three Rivers

Electric Co-op.*, 166 F.R.D. 411, 412 (E.D. Mo. 1996). The Court finds this element is satisfied

and agrees with Defendant USB that it fits within the definition as an "association." The Court

also finds Defendant USB can be identified as a "partnership" with the United States Department of Agriculture, through the Secretary and/or the AMS.

**Conclusion**

Based on the foregoing reasons, the Court finds that it has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1442(a)(1) and will deny Plaintiff's motion to remand this case to state court.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand to State Court [ECF No. 20] is **DENIED**.

**IT IS FURTHER ORDERED** that the parties **jointly** file a proposed amended Case Management Order within seven (7) days from the date of this Order. If the parties agree that an amended Case Management Order is not necessary, the parties are ordered to file a joint notice to the Court within seven (7) days from the date of this Order.

Dated this 31st day of January, 2024.


_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**